UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**CIVIL ACTION NO: 5:05CV-043-M**

**JOHN P. ECKSTEIN and**
**LOREE ECKSTEIN**                                                                                   **PLAINTIFFS**

**V.**

**CINCINNATI INSURANCE COMPANY and**
**GREAT NORTHERN INSURANCE COMPANY,**
**a subsidiary of THE CHUBB CORPORATION**                                           **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Summary Judgment on their Claim Seeking a Declaration of Rights on Coverage Trigger Theories [DN 15]. Fully briefed, this matter stands ripe for decision. For the following reasons, Plaintiffs' Motion for Summary Judgment is **DENIED.**

### I. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific

facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II. BACKGROUND

The Ecksteins, a husband and wife, bring this action against Defendants, Cincinnati Insurance Company ("CIC") and Great Northern Insurance Company ("Great Northern"), a subsidiary of the Chubb Corporation ("Chubb"), in an attempt to recover on some or all of the insurance policies that they had taken out on their home. It is not disputed that their home experienced water damage due to a variety of construction related issues, which ultimately resulted in the home becoming contaminated with toxicgenic mold. The toxicgenic mold rendered the home uninhabitable and forced the Ecksteins to live in temporary housing for nearly two years.

Plaintiffs began construction on their home in 1998. From that time through the sale

of their home in February of 2005, Plaintiffs purchased a total of four insurance policies from the two Defendants. CIC issued Builder's Risk Policy CAP 542 33 43 to the Plaintiffs which had an initial period of November 11, 1998 to November 11, 1999. The policy period was amended to include November 11, 1999 to March 11, 2000, and then again to include March 11, 2000 to July 11, 2000. Great Northern issued Policy 11937190-01 to the Ecksteins for the period of June 6, 2000 to June 6, 2001. Great Northern then issued a second policy, Policy 11937190-02 to the Ecksteins on June 6, 2001. That Policy was cancelled effective December 1, 2002. On that date, CIC issued a policy numbered HR 8305747 to the Ecksteins. The policy period for CIC Policy HR 8305747 was from December 1, 2002 until December 1, 2005.

All parties to this litigation employed various experts who confirmed the existence of toxicgenic mold and other structural issues which contributed to water leakage that permeated the home. The issue is simply which insurance policy or policies, if any, should cover the loss. To aid in this determination, the Plaintiffs' motion asks the Court to adopt a coverage trigger theory.

### III. DISCUSSION

In cases such as this, some courts have utilized a coverage trigger theory to establish the date of loss for determining when coverage is triggered. Only two, the "manifestation" theory and the "continuous trigger" theory, are fully briefed by the parties. All parties except CIC agree that the Court should specifically adopt one theory at this stage in the litigation, and CIC has no strong objection to the Court's adoption of the manifestation theory. All

parties further agree that no Kentucky court has ever adopted a specific "trigger theory."

The Plaintiffs urge the Court to adopt the "continuous trigger" theory, which they argue implicates all four coverage policies absent a bond fide coverage defense. They contend that the "continuous trigger" theory is appropriate under these facts, but they also state that they have "no strong objection to the adoption of the manifestation approach." CIC argues that the Court need not adopt a specific "trigger theory" at this time, but, rather, it should only examine the express terms of the insurance policies at issue. In the alternative, if the Court should find it necessary to adopt a trigger theory, CIC urges the Court to adopt the manifestation trigger theory. Great Northern likewise urges the Court to adopt the manifestation theory. In so arguing, it cites policy arguments but also notes that the manifestation trigger is the appropriate trigger in cases, such as this one, involving first party property damage claims. Thus, it contends that the Plaintiffs' assertion that the continuous trigger theory should apply to this litigation is misplaced because the continuous trigger theory has no application to first party property damage insurance claims.

Neither the Court nor the parties have located any cases in which Kentucky courts have provided an indication as to what trigger theory they may adopt or whether they would even be inclined to adopt a specific trigger theory in the first place. "Federal courts hearing diversity matters should be extremely cautious about adopting 'substantive innovation' in state law." Combs v. Int'l Ins. Co., 354 F.3d 568, 578 (6th Cir. 2004). "[F]ederal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion." Burris Chem., Inc. v. USX Corp., 10 F.3d 243, 247 (4th Cir. 1993). A federal

court should not attempt "dramatic innovation" in state law. <u>Murphy v. White Hen Pantry Co.</u>, 691 F.2d 350, 355 (7th Cir. 1982).  "If a case can be decided without resolving an unsettled question of state law, a federal court should be reluctant to declare state-created rights or remedies."  <u>In Re Frank Kunik Farms, Inc.</u>, 86 Bankr. 907, 910 n. 4 (Bankr. E.D. Mich. 1988).

The parties argue that the adoption of a specific trigger theory would serve to reduce the number of policies the Court must examine.  Furthermore, the parties argue that Kentucky should adopt a specific trigger theory to help more easily resolve similar cases in the future.  The Court does not believe it needs to adopt a trigger theory.  This case can be decided without doing so.  It will entail a little more work in that each policy will need to be analyzed with respect to coverage and exclusions.  However, there are only four policies and it should not prove to be too burdensome.  And while it might be beneficial for the Kentucky Supreme Court to adopt a trigger theory for use in these cases, the adoption of such a rule is better left to the Kentucky Supreme Court.  The Court agrees with CIC that it should decide the case by examining the terms of the four policies at issue.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment on their Claim Seeking a Declaration of Rights on Coverage Trigger Theories [DN 15] is **DENIED**.

cc: counsel of record
05cv‑043Eckstein